UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                                 CRIMINAL ACTION NO. 5:20-cr-00191

GREGORY ANTHONY WATERS

**MEMORANDUM OPINION AND ORDER**

Pending are Petitioner Gregory Anthony Waters' Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 142], filed January 12, 2023, Amended Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 145], filed March 24, 2023, and Letter-Form Motion for Modification of a Term of Imprisonment pursuant to 18 U.S.C. § 3582 [Doc. 150], filed August 2, 2023. The matters are ready for adjudication.

**I.**

On March 18, 2021, Mr. Waters plead guilty to one count of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 19, 2022, Mr. Waters was sentenced to 88 months in prison, to be followed by a three-year term of supervised release. He is currently incarcerated, with a projected release date of April 9, 2026.

On January 12, 2023, Mr. Waters filed the instant Motion for Sentence Reduction [Doc. 142], which he amended on March 24, 2023 [Doc. 145]. Mr. Waters asserts that together, his rehabilitative efforts, family circumstances, harsh conditions of confinement, and disproportionately long sentence warrant a sentence reduction. [Doc. 142 at 2–15; Doc. 145 at

1–4]. Specifically, Mr. Waters contends that he has completed "many hours of evidence-based rehabilitative and recidivism-reducing classes and programs" since being incarcerated. [Doc. 142 at 8]. He further asserts that he must attend to the needs of his children, a 10-year-old daughter and a 14-year-old son with autism, and the restaurant he co-owns with his fiancée who "struggles to keep things going in his absence." [*Id.* at 4]. Additionally, he claims that while incarcerated, he has been sexually harassed, served spoiled food, exposed to black mold, denied adequate medical-care, and forced to endure many unnecessary and inhumane lockdowns. [Doc. 142 at 13; Doc.145 at 2–3] He also contends that other "similarly and worst-situated defendants" received far more lenient sentences. [Doc. 142 at 11].

Mr. Waters also filed the instant Letter-Form Motion [Doc. 150], in which he further asserts his medical circumstances warrant a sentence reduction in light of the ongoing COVID-19 pandemic. [*Id.* at 1–3]. Mr. Waters contends that he has a high-risk of developing severe COVID-19 outcomes given his age, high blood pressure, diabetes, and hepatitis C. [*Id.* at 1].

**II.**

The First Step Act (the "Act") amended 18 U.S.C. § 3582(c)(1)(A) to expand access to compassionate release to incarcerated individuals. Prior to enactment, a court could only consider compassionate release on motion by the BOP. The Act permits "incarcerated persons to file their own motions for compassionate release." *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024). Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), the defendant must first exhaust the administrative process established by the BOP or allow "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

To grant an inmate's motion for compassionate release or sentence reduction under

18 U.S.C. § 3582(c)(1)(A)(i), the court must (1) find that extraordinary and compelling reasons warrant a sentence reduction, (2) determine whether the requested reduction in sentence is consistent with "applicable policy statements issued by the Sentencing Commission," *Davis*, 99 F.4th at 654 (internal quotation marks omitted), and (3) consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a). The Act "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Concepcion v. United States*, 597 U.S. 481, 484 (2022). However, this broad discretion "does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence . . . counsels against providing relief." *Id*. at 502. Rather, "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id*. at 486–87; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (holding that when analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion in conducting [its] analysis.").

In April 2023, the U.S. Sentencing Commission promulgated amendments to the federal sentencing guidelines that took effect on November 1, 2023. Among those amendments was a revision to Section 1B1.13(a) authorizing a defendant to file a motion under 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 further provides any of the following circumstances or combination thereof constitute extraordinary and compelling reasons: (1) the medical circumstance of the defendant, including, *inter alia*, an ongoing infectious disease outbreak at the defendant's facility or an ongoing declared public health emergency; (2) the defendant's age; (3) the defendant's family circumstances; (4) the defendant is a victim of abuse; (5) other

3

circumstances similar in gravity to those previously listed; or (6) the defendant received of an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(1)-(6).

In determining whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, district courts have considered the age of the inmate, the documented history and severity of the inmate's health conditions, and the proliferation and status of infections in the prison facility. *United States v. Brady*, No. S2 18 CR. 316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases). Courts give particular attention to the presence of comorbidities that the Centers for Disease Control identifies as increasing the risk of serious illness from COVID-19. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (finding an "extraordinary and compelling reason" for compassionate release based on the inmate's diabetes, high blood pressure, and liver abnormalities, as well as the outbreak at FCI Elkton and the short period remaining on his sentence); *United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release due to defendant's diabetes and age in light of the COVID-19 outbreak); *United States v. Colvin*, 451 F. Supp. 3d 237, 241 (D. Conn. Apr. 2, 2020) (granting compassionate release based on defendant's diabetes, paired with the COVID-19 outbreak).[1]

If an inmate demonstrates extraordinary and compelling reasons for release, and a reduction is consistent with the Sentencing Commission's policy statements, the court must then consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to reduce the inmate's sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. High*, 997 F.3d 181, 187 (4th

---

[1] Importantly, each of the cited cases was decided early in COVID-19's spread throughout the United States and before vaccinations were available to inmates. *See Rodriguez*, 451 F. Supp. 3d at 393 (considering the lack of an "approved cure, treatment, or vaccine to prevent [COVID-19]" in its analysis); *Zukerman*, 451 F. Supp. 3d at 333 (citing the defendant's "unique circumstances and the exigency of a rapidly advancing pandemic" as factors favoring release).

Cir. 2021). These factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a); *see High*, 997 F.3d at 187.

### III.

Upon careful review under 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13, and the factors set forth in 18 U.S.C. § 3553(a), the Court concludes Mr. Waters has not shown that relief is warranted in this case. The Court acknowledges that while Mr. Waters's asserted conditions of high blood pressure, diabetes, and hepatitis C are serious in nature, and may put him at a "higher risk" of contracting a serious case of COVID-19, as of October 8, 2024, there are only eight active cases of COVID-19 among the 2,360 inmates at FCC Petersburg[2] where Mr. Waters is currently housed. *Inmate COVID-19 Data*, FED. BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Oct. 9, 2024). Additionally, nearly 75% of the inmate population at FCC Petersburg is vaccinated against COVID-19. *Id.* These numbers are not of "extraordinary and compelling" concern.

Likewise, while "studies demonstrate that the risk of recidivism is inversely related to an inmate's age," *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014), Mr. Waters was 52 when he committed the instant offense. His age suggests that he had not learned his lesson even in maturity. And while Mr. Waters's rehabilitative efforts and lack of disciplinary infractions are

---

[2] FCC Petersburg is federal correctional complex comprised of two separate facilities -- FCI Petersburg Medium and FCI Petersburg Low – and located in Hopewell, VA. Mr. Waters is currently incarcerated at FCI Petersburg Medium, a medium security federal correctional institution with an inmate population of 1,588.

commendable, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for sentence modification. 28 U.S.C. § 994(t). The Court may, however, account for a defendant's rehabilitative efforts "in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). But in light of Mr. Waters's advanced age when he committed the instant offense and extensive criminal history, his post-sentencing rehabilitation efforts do not outweigh the considerations that led the Court to sentence Mr. Waters to 88 months' imprisonment in the first place.

Moreover, to the extent Mr. Waters claims he was sexually assaulted by a correctional officer during a routine strip search, his allegations of being ordered to "pull back on his foreskin" despite being circumcised, [Doc 145 at 3], do not meet the Guidelines' definition of "victim of abuse."[3]

---

[3] For purposes of a motion pursuant to 18 U.S.C. § 3582(c)(1)(A), to be considered a "victim of abuse" "the defendant, "while in custody serving the term of imprisonment sought to be reduced," must have suffered "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. 2246(2)." U.S.S.G. § 1B1.13(b)(4). 18 U.S.C. § 2246(2) defines "sexual act" as follows:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.
>
> Additionally, such "misconduct must be established by a conviction in a criminal case, a

Additionally, Mr. Waters asserts that his family circumstances are extraordinary and compelling reasons for a sentence reduction. He contends that his two minor children require his care, and the restaurant he owns with his fiancée is struggling in his absence. [Doc. 142 at 6–7; Doc. 145 at 3; Doc. 150 at 3]. Generally, courts will "deny compassionate release when another suitable caregiver is available for the defendant's child[ren]." *United States v. Waldron*, No. 2:17-CR-00116, 2023 WL 4306910, at *2 (S.D.W. Va. June 30, 2023). Mr. Waters has not shown that there are no other available caregivers for his children, nor has he implied that his fiancée is incapacitated or otherwise unable to provide for them. Even if his fiancée was incapacitated, Mr. Waters identified other family members (his mother) who presumably would be able to act as caregiver. *See* [Doc. 142 at 6–7]. And his struggling business is not "similar in gravity to" the circumstances described in Sections 1B1.13(b)(1)–(4).

Lastly, Mr. Waters suggests his 88-month term of imprisonment is unusually long compared to the average sentence for crimes involving "Extortion/racketeering" (32 months) and "National Defense" (42 months). [Doc. 142 at 11]. Such argument does not appear to be grounded in Section 1B1.13, but instead may be based on our Court of Appeals' analysis in *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020) (comparing the length of the defendants' § 924(c) sentences to the "national average" in federal murder cases). Although it remains appropriate to consider the reasoned guidance provided in *McCoy*, the Court must also consider whether an "unusually long" sentence warrants compassionate release under the revised 2023 standard set forth in Section 1B1.13(b)(6). That standard requires the defendant to have "served at least 10 years of the term of imprisonment." U.S.S.G. § 1B1.13(b)(6). Mr. Waters total term of

---

finding of admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." *Id.*

imprisonment is less than 10 years.

Even if Mr. Waters could demonstrate extraordinary and compelling reasons for compassionate release, the applicable 18 U.S.C. § 3553(a) factors weigh strongly against a reduction in his sentence. Mr. Waters is scheduled to be released on April 9, 2026, after he completes an 88-month term of imprisonment for knowingly and intentionally distributing crack cocaine. Mr. Waters's actions and offender history have shown a clear disregard for the criminal justice system. At sentencing, Mr. Waters prior criminal convictions resulted in a criminal history score of 14, placing him in the highest criminal history category of VI. [Doc. 132 at 24]. He was given a three-level reduction for acceptance of responsibility, resulting in a total offense level of 27. [Doc. 131 at 1]. Accordingly, his guideline range was 130 to 162 months' imprisonment. [*Id.*] After considering Mr. Waters's age, community service, addiction, and showing of remorse, the Court varied below the guideline range. [*Id.* at 3]. A sentence reduction to an already below-guideline range sentence would not reflect the seriousness of the offense or promote respect for the law. Neither would it afford adequate deterrence for criminal conduct.

In sum, regardless of Mr. Waters's age, medical history, familial circumstances, alleged sexual harassment, and length of his sentence, the § 3553(a) factors strongly counsel against a sentence reduction. And to the extent Mr. Waters seeks to challenge his conditions of confinement, a motion for compassionate release is not the correct vehicle for filing complaints about prison conditions. *United States v. Cooper*, No. 2:16-CR-00022, 2024 WL 2095945, at *2 (S.D.W. Va. May 9, 2024); *United States v. Fleming*, No. 2:18-CR-00141, 2022 WL 5975429, at *4 (S.D.W. Va. Feb. 28, 2022).

### IV.

Accordingly, the Court **DENIES** Petitioner's Motion for Sentence Reduction [**Doc.**

**142**], **DENIES** Petitioner's Amended Motion for Sentence Reduction [**Doc. 145**], and **DENIES** Petitioner's Letter-Form Motion for Modification of a Term of Imprisonment [**Doc. 150**].

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: October 11, 2024



Frank W. Volk
Chief United States District Judge